**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

---

|  |  |  |
|---|---|---|
| | : | |
| ALI ALMANSORI, | : | |
| | : | Civil No. 04-6250 (RBK) |
| Petitioner, | : | |
| | : | |
| v. | : | |
| | : | **OPINION** |
| JOHN NASH, WARDEN, | : | |
| | : | |
| Respondent. | : | |
| | : | |

---

**APPEARANCES:**

ALI ALMANSORI, Petitioner pro se
#69019-053
F.C.I. Fort Dix
P.O. Box 2000
Fort Dix, New Jersey 08640-0902

CHRISTOPHER J. CHRISTIE
United States Attorney
J. ANDREW RUYMANN, ESQ.
Assistant U.S. Attorney
402 East State Street
Trenton, New Jersey 08608
Counsel for Respondent

**KUGLER, District Judge**

This matter is before the Court on petitioner Ali Almansori's ("Almansori") application for habeas corpus relief under 28 U.S.C. § 2241. Respondent filed an answer to the petition on or about March 1, 2005; and petitioner filed objections thereto on March 22, 2005. The Court has reviewed all

documents submitted and, for reasons now discussed, will deny the petition.

<u>BACKGROUND</u>

Almansori is presently in custody at F.C.I. Fort Dix in Fort Dix, New Jersey, serving a 27 month prison sentence, as imposed by the United States District Court for the Eastern District of New York on June 20, 2003, for his conviction of Structuring Transactions to Evade Reporting Requirements, in violation of 31 U.S.C. § 5324(a)(3)(d)(2).[1]  His projected release date is September 19, 2005.  <u>See</u> Federal Bureau of Prisons Inmate Locator, Internet site at http://inmateloc.bop.gov.

The Bureau of Prisons ("BOP") initially assigned Almansori to FCI Allenwood, a low security institution, on October 7, 2003. He was transferred to the Intensive Confinement Center ("ICC") at Lewisburg, Pennsylvania, on May 4, 2004.  The ICC was a specialized BOP program, which combined aspects of military boot camp with traditional BOP correctional values, followed by extensive participation in community-based programs.  Effective January 14, 2005, the BOP no longer offers the ICC program as a program option for federal inmates.

---

[1]  Almansori incorrectly stated in his petition that he was convicted in the United States District Court for the Southern District of New York.  The BOP data submitted by the respondent shows that petitioner was convicted and sentenced in the Eastern District of New York.

Inmates who met ICC eligibility criteria were placed in the program for six months.  An inmate who completed the institution-based part of the ICC program would typically be allowed to serve the balance of his sentence in a community-based program.  If the inmate maintained successful participation in the community-based component of the ICC program, he would be considered for a reduction in sentence not to exceed six months.  (BOP Program Statement 5390.08, <u>Intensive Confinement Center (ICC) Program</u>, pp. 2 and 8).

In this case, Almansori was admitted in the ICC program at Lewisburg, Pennsylvania.  While in the ICC program, Almansori's son brought a cell phone to the ICC during a visit with Almansori.  When the cell phone rang, the son removed it from his pocket and gave it to staff.  Security was called and the visit was immediately terminated.  Almansori was placed in segregation at FCI Allenwood for 46 days, pending an investigation of the incident by the F.B.I.  He was terminated from the ICC program, and transferred to FCI Fort Dix, a low-security facility,[2] pursuant to a Close Supervision (Code 323) transfer request.  The

---

[2]  Petitioner describes FCI Fort Dix as a medium security prison with a largely foreign population.  However, the BOP defines FCI Fort Dix as a low security facility.  <u>See</u> www.bop.gov.

transfer request was granted by the Northeast Regional Director of the BOP on September 14, 2004.

A Close Supervision (Code 323) transfer usually results from an investigation that indicates the inmate poses a safety, security, or escape risk.  See BOP Program Statement 5100.07, Security Designation and Custody Classification Manual, Chapter 10, p. 24.  Respondent does not provide the specific reasons supporting the Close Supervision (Code 323) transfer.[3]

Almansori alleges that he had a six-month half-way house eligibility date until his removal from the ICC program.  Now, he will only receive two months community-based confinement.[4]  He also alleges that he attempted to remedy this situation by filing a grievance with his Unit Team.  Almansori contends that he

---

[3]  Because the Code 323 transfer relates to security issues, the respondent offers to provide the Court with the Code 323 transfer information relevant to petitioner under seal, if the Court should determine that the substance of the security investigation is necessary to reach a decision in this case.  The Court finds that the specific grounds for the Code 323 transfer are not material in determining the merits of this petition because petitioner does not have a protected liberty interest in his placement in a specific BOP program or facility.  See this Opinion, infra, at pp. 11-15.

[4]  The Court does not construe this claim as a challenge to the BOP's new community corrections center ("CCC") regulations, which took effect on February 14, 2005, see 28 C.F.R. §§ 570.20, 570.21; 70 Fed.Reg. 1659-01 (January 10, 2005), 2005 WL 34181, or the BOP's December 2002 policy change with respect to transitional CCC placement under 18 U.S.C. § 3624(c).  Rather, it is clear that petitioner's argument focuses on his transfer out of the ICC program, which led to the alleged loss of early CCC placement as permitted under the now defunct ICC program, if Almansori had successfully completed it.

4

should be excused from exhausting his administrative remedies because the time frame for exhaustion would exceed the time left for service of his six months in a half-way house.  He also seeks to restore all credits owed in qualifying for the ICC program. Principally, petitioner argues that he was denied due process when he was removed from the ICC program and transferred to FCI Fort Dix because of his son's "honest mistake".

The Government contends that petitioner failed to exhaust his administrative remedies as required; that the action is not cognizable under § 2241; and there is no constitutional basis to challenge petitioner's transfer from the ICC program to FCI Fort Dix.  Respondent does confirm that a community corrections center ("CCC") referral form has been signed recommending Almansori for CCC placement on July 11, 2005.  As of February 17, 2005, FCI Fort Dix was still awaiting approval and a final CCC date from the Community Corrections Manager ("CCM") in Brooklyn, New York.

In his objection to the Government's response, Almansori again asserts that exhaustion of administrative remedies would be futile; that his action is cognizable under § 2241; and that he had a vested liberty interest in community confinement based on his overall compliance with the ICC program before his transfer.

III.  <u>DISCUSSION</u>

A.  <u>Standard of Review</u>

Almansori seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2241(c)(3).  That section states that the writ will not be extended to a prisoner unless "he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3).

A pro se pleading is held to less stringent standards than more formal pleadings drafted by lawyers.  See <u>Estelle v. Gamble</u>, 429 U.S. 97, 106 (1976); <u>Haines v. Kerner</u>, 404 U.S. 519, 520 (1972).  A pro se habeas petition and any supporting submissions must be construed liberally and with a measure of tolerance.  <u>See</u> <u>Royce v. Hahn</u>, 151 F.3d 116, 118 (3d Cir. 1998); <u>Lewis v. Attorney General</u>, 878 F.2d 714, 721-22 (3d Cir. 1989); <u>United States v. Brierley</u>, 414 F.2d 552, 555 (3d Cir. 1969), <u>cert. denied</u>, 399 U.S. 912 (1970).

B.  <u>Characterization of Petition Under § 2241</u>

Almansori characterizes his action as a petition for a writ of habeas corpus under 28 U.S.C. § 2241.  Respondent argues, however, that the petition challenges the conditions of Almansori's confinement; therefore, a § 2241 petition is not the appropriate avenue for relief.

The Court disagrees with respondent's contention that an action under § 2241 in this case is not appropriate.  "Section

6

2241 is the only statute that confers habeas jurisdiction to hear the petition of a federal prisoner who is challenging not the validity but the execution of his sentence." <u>Coady v. Vaughn</u>, 251 F.3d 480, 485-86 (3d Cir. 2001).  An action under § 2241 "generally challenges the *execution* of a federal prisoner's sentence, including such matters as the administration of parole, computation of a prisoner's sentence by prison officials, prison disciplinary actions, prison transfers, types of detention and prison conditions." <u>Jiminian v. Nash</u>, 245 F.3d 144, 146 (2d Cir. 2001)(emphasis in original).[5]  <u>See also</u> <u>Hernandez v. Campbell</u>, 204 F.3d 861, 864 (9th Cir. 2000)("petitions that challenge the manner, location, or conditions of a sentence's execution must be brought pursuant to § 2241 ..."); <u>Pack v. Yusuff</u>, 218 F.3d 448, 451 (5th Cir. 2000)("A section 2241 petition on behalf of a

---

[5]   <u>But</u> <u>see</u> <u>Wright v. Cuyler</u>, 624 F.2d 455 (3d Cir. 1980), where the Third Circuit ruled that a § 1983 civil rights action was the appropriate vehicle for a state prisoner challenging a non-admission to a home-furlough program.  The court noted that plaintiff's "demand for a fair application of the [program] eligibility criteria, as distinct from his demand for admission to the program, relates to the manner by which the prison authorities reach their decision and not the outcome of their decision." <u>Id</u>. 624 F.2d at 458 n.5.  Thus, because the plaintiff was seeking fair decisionmaking procedures, rather than release, the action was a § 1983 claim.  <u>Id</u>.  <u>See</u> <u>also</u> <u>Georgevich v. Strauss</u>, 772 F.2d 1078, 1087 (3d Cir. 1985)(in banc), <u>cert</u>. <u>denied</u>, 475 U.S. 1208 (1986).  Moreover, the Third Circuit recognized in both <u>Wright</u> and <u>Georgevich</u> that success in the § 1983 action might affect the duration of the prisoners' confinement, but this indirect, eventual consequence was not a sufficient reason to characterize the claims as exclusively maintainable as a habeas petition.  <u>See</u> <u>Tedford v. Hepting</u>, 990 F.2d 745, 748 (3d Cir.), <u>cert</u>. <u>denied</u>, 510 U.S. 920 (1993).

sentenced prisoner attacks the manner in which the sentence is being carried out or the prison authorities' determination of its duration ..."); Kingsley v. Bureau of Prisons, 937 F.2d 26, 30 (2d Cir. 1991)("challenges to the length, appropriateness or conditions of confinement are properly brought under 28 U.S.C. § 2241"); United States v. Ferri, 686 F.2d 147, 158 (3d Cir. 1982), cert. denied, 459 U.S. 1211 (1983)(claims attacking the execution of a petitioner's sentence are properly brought under 28 U.S.C. § 2241).  A petition under § 2241 in the district where the federal inmate is confined provides a remedy "where petitioner challenges the effects of events 'subsequent' to his sentence."  Gomori v. Arnold, 533 F.2d 871, 874 (3d Cir. 1976), cert. denied, 429 U.S. 851 (1976).

Indeed, "Section 2241 of title 28 has long been recognized as the basis for challenging the execution of the sentence of a person in federal custody or a person sentenced for violating a federal criminal statute."  Zucker v. Menifee, 2004 WL 102779, *3 (S.D.N.Y. January 21, 2004)(citing Maleng v. Cook, 490 U.S. 488, 493 (1989)(per curiam)).  Additionally, this Court has the authority to compel the BOP to exercise its discretion in selecting and designating a place for service of sentence.  See McCarthy v. Doe, 146 F.3d 118 (2d Cir. 1998).  Habeas corpus relief under 28 U.S.C. § 2241 is available to effectuate this authority to the extent that the prisoner is in any form of

8

"custody" in this district.  See Hensley v. Municipal Court, 411 U.S. 345 (1973).

Here, Almansori challenges his transfer out of the ICC program and the BOP's determination to reduce his CCC placement as a result of the Code 323 transfer.  These claims relate to the duration and execution of petitioner's prison sentence. Moreover, this Court will take judicial notice of the fact that numerous cases challenging the BOP's recent policy change affecting CCC placement have been filed in this federal district as § 2241 petitions, and have been decided as § 2241 cases.[6] Therefore, the Court finds that § 2241 is an appropriate avenue for the relief that Almansori seeks.

C.  Exhaustion of Administrative Remedies

Although 28 U.S.C. § 2241 contains no statutory exhaustion requirement, a federal prisoner ordinarily may not bring a petition for writ of habeas corpus under 28 U.S.C. § 2241, challenging the execution of his sentence, until he has exhausted all available administrative remedies.  See, e.g., Callwood v. Enos, 230 F.3d 627, 634 (3d Cir. 2000); Arias v. United States Parole Comm'n, 648 F.2d 196, 199 (3d Cir. 1981); Soyka v.

---

[6]  In these cases, other judges have determined that a habeas petition under § 2241 is the proper vehicle for challenging the CCC placement issue because it is an actual challenge to the execution of a federal inmate's sentence.  See United States v. Eakman, No. 03-1835, Slip Op. at n.8 (3d Cir. July 12, 2004); Coady v. Vaughn, 251 F.3d 480, 485-86 (3d Cir. 2001); Barden v. Keohane, 921 F.2d 476, 478-79 (3d Cir. 1991).

Alldredge, 481 F.2d 303, 306 (3d Cir. 1973).  The exhaustion

doctrine promotes a number of goals:

> (1) allowing the appropriate agency to develop a
> factual record and apply its expertise facilitates
> judicial review; (2) permitting agencies to grant the
> relief requested conserves judicial resources; and (3)
> providing agencies the opportunity to correct their own
> errors fosters administrative autonomy.

Goldberg v. Beeler, 82 F. Supp.2d 302, 309 (D.N.J. 1999), aff'd,

248 F.3d 1130 (3d Cir. 2000).  See also Moscato v. Federal Bureau

of Prisons, 98 F.3d 757, 761 (3d Cir. 1996).  Nevertheless,

exhaustion of administrative remedies is not required where

exhaustion would not promote these goals.  See, e.g., Gambino v.

Morris, 134 F.3d 156, 171 (3d Cir. 1998) (exhaustion not required

where petitioner demonstrates futility); Lyons v. U.S. Marshals,

840 F.2d 202, 205 (3d Cir. 1988) (exhaustion may be excused where

it "would be futile, if the actions of the agency clearly and

unambiguously violate statutory or constitutional rights, or if

the administrative procedure is clearly shown to be inadequate to

prevent irreparable harm"); Carling v. Peters, 2000 WL 1022959,

*2 (E.D. Pa. 2000) (exhaustion not required where delay would

subject petitioner to "irreparable injury").

The Court finds that it would be futile to now require

Almansori to exhaust his administrative remedies given the time-

sensitive nature of his claim.  Moreover, it is clear that the

petition fails to state a claim of federal constitutional

deprivation since Almansori has no constitutional basis to challenge his transfer out of the ICC program.

D.   No Liberty Interest in Transfer, Placement, or Classification

Almansori claims that he has a vested interest in early release to a CCC because of the fact that he had been successfully vetted for the ICC program and because he was exonerated of any wrongdoing with regard to the cell phone incident.  As stated above, the facts show that Almansori was transferred out of the ICC program to FCI Fort Dix under a Close Supervision (Code 323) transfer, which results from an investigation that indicates a safety, security, or escape risk. Almansori's transfer followed an investigation into a cell phone incident involving his son.  Almansori was not charged with a disciplinary infraction, he was not adjudicated of any guilt, and he did not lose any good time credits as a result of the cell phone incident.[7]

Almansori's claim presumes that he has a protected liberty interest in his placement in a special prison program or facility.  A liberty interest protected by the Due Process Clause may arise from either of two sources:  the Due Process Clause

---

[7]  Because the Code 323 transfer was not a disciplinary action that resulted in an adjudication of guilt and the loss of privileges and good time credits, there is no need for the Court to review the details of the BOP's internal investigation.

itself or duly enacted laws and regulations.  See Asquith v.
Department of Corrections, 186 F.3d 407, 409 (3d Cir. 1999).[8]

In general, an inmate does not have a liberty interest in
assignment to a particular institution or to a particular
security classification.  See Olim v. Wakinekona, 461 U.S. 238,
245 (1983); Meachum v. Fano, 427 U.S. 215, 224-25 (1976);
Montayne v. Haymes, 427 U.S. 236, 243 (1976); Moody v. Daggett,
429 U.S. 78, 88 n.9 (1976)(noting that prison classification and
eligibility for rehabilitative programs in the federal prison
system are matters delegated by Congress to the "full discretion"
of federal prison officials and thus implicate "no legitimate
statutory or constitutional entitlement sufficient to invoke due
process"); Newell v. Brown, 981 F.2d 880, 883 (6th Cir. 1992),
cert. denied, 510 U.S. 842 (1993); Beard v. Livesay, 798 F.2d
874, 876 (6th Cir. 1986).

The Supreme Court has held that so long as the conditions or
degree of confinement to which the inmate is subjected is within
the sentence imposed upon him and does not otherwise violate the
constitution, the Due Process Clause does not in itself subject

---

[8]  See Gambino v. Gerlinski, 96 F. Supp.2d 456, 459 (M.D.
Pa. 2000)(citing Hewitt, 459 U.S. at 471-72)(in order for a
statute to confer a liberty interest it must be "explicitly
mandatory" and provide for "specified substantive predicates"
which dictate a substantive result), aff'd, 216 F.3d 1075 (3d
Cir. 2000).  Here, there is no allegation that Almansori has a
statutorily granted right to CCC placement at six months before
his projected release date.

an inmate's treatment by prison authorities to judicial oversight. Sandin v. Connor, 515 U.S. 472, 484-86 (1995)(holding that a liberty interest is implicated only where the action creates "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life" or creates a "major disruption in his environment"); Kentucky Dept. of Corrections v. Thompson, 490 U.S. 454, 463 (1989)(holding that a liberty interest arises only where a statute or regulation uses "explicitly mandatory language" that instructs the decision-maker to reach a specific result if certain criteria are met); Walker v. Hughes, 558 F.2d 1247, 1252 (6th Cir. 1977)("Federal statutory law gives federal prison officials full discretion in the treatment of prisoners and does not restrict the authority of prison officials over the inmates as to placement in more restrictive living status, transfer to other prisons, subjection to significant and adverse effects on parole dates, and deprivation of privileges."). See also Asquith, 186 F.3d at 411-12 (return to prison from halfway house did not impose "atypical and significant hardship" on prisoner and, thus, did not deprive him of protected liberty interest).

Moreover, the BOP has express congressional authorization to designate or transfer an inmate to any available correctional facility that it deems appropriate, giving consideration to facility resources and the history and characteristics of the

inmate.  See 18 U.S.C. § 3621(b).  Broad deference is to be accorded the BOP's discretion in managing its facilities and executing policies and practices that deal with day-to-day operations and administration of the prisons.  See Thornburgh v. Abbott, 490 U.S. 401, 407-08 (1989); Turner v. Safley, 482 U.S. 78, 84-85 (1987); Bell v. Wolfish, 441 U.S. 520, 547 (1979); Jones v. North Carolina Prisoners' Labor Union, Inc., 433 U.S. 119, 129 (1977).

Thus, for Almansori to establish the existence of a liberty interest, he must show that he has been subjected to an "atypical and significant hardship ... in relation to the ordinary incidents of prison life," Sandin, 515 U.S. at 484, or that the Government's action "will inevitably affect the duration of his sentence."  Id. at 487.  Almansori has made neither showing.

Almansori does not contend that he has been subject to any extraordinary treatment that would constitute "atypical and significant hardship" at prison.  He simply disagrees with the BOP's transfer decision.  Almansori's custodial placement is a day-to-day prison management issue, subject to the BOP's administrative discretion under 18 U.S.C. § 3621(b).  His custodial status does not constitute an atypical or significant hardship on him in relation to the ordinary incidents of prison life.  See Sandin, 515 U.S. at 484.  Further, there is no allegation that Almansori's prison term has been extended.

14

Moreover, even if Almansori had successfully completed the ICC program, he has no liberty interest in receiving a reduction of his sentence.  The BOP has the discretionary authority to decide who participates in rehabilitation programs, and of those participants, who is eligible for a sentence reduction.  See 18 U.S.C. § 3621(e)(5)(B); Parsons v. Pitzer, 149 F.3d 734, 737 (7th Cir. 1998)(mere eligibility to be considered for sentence reduction does not require the BOP to grant the relief sought by inmate).  Discretionary decisions regarding an inmate's release from prison do not imply a liberty interest in that possible release.  Cf. Greenholtz v. Inmates of the Nebraska Penal and Correctional Complex, 442 U.S. 1 (1979).  Here, the participation in the ICC program was discretionary.  Had Almansori completed the program, which he did not, he still was not statutorily or constitutionally entitled to early release.

Therefore, because Almansori cannot show any federal constitutional or statutory entitlement to early CCC placement as a result of his participation in the ICC program before his disputed transfer, his petition must be denied.

15

<u>CONCLUSION</u>

For the reasons set forth above, the petition for habeas relief will be denied.  An appropriate order follows.


_s/Robert B. Kugler_____
ROBERT B. KUGLER
United States District Judge

Dated:    May 16 , 2005